Case 04-60523    Filed 03/15/06    Doc 215

POSTED ON WEB SITE

FILED
MAR 15 2006
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                    )   Case No. 04-60523-B-11
                                         )
Kings River Resorts, Inc.,               )   DC No. DRJ-5
                                         )   DC No. MMQ-1
                Debtor.                  )
_____)

**MEMORANDUM DECISION REGARDING OBJECTION TO
PRIORITY CLAIM OF JEFF MISHKIN AND COUNTER-MOTION TO
ALLOW ADMINISTRATIVE CLAIM OF MARCUS & MILLICHAP, INC.**

David R. Jenkins, Esq., appeared for Kings River Resorts, Inc. (the "Debtor").

Maureen McQuaid, Esq., of the Law Offices of Maureen McQuaid appeared for Marcus & Millichap, Inc. ("Marcus & Millichap").

Michael T. Hertz, Esq., of Lang, Richert & Patch appeared for the Official Committee of Unsecured Creditors ("Creditors Committee").

   The Debtor objects to a proof of claim filed by Jeff Mishkin on behalf of Marcus & Millichap, as a priority claim in the amount of $125,000 (the "Mishkin Claim"). The Creditors Committee joins the Debtor in objecting to the Mishkin Claim. Marcus & Millichap subsequently filed its own Proof of Amended Administrative Expense Claim, also in the amount of $125,000 (the "Admin. Claim"). The Admin. Claim appears to supercede and replace the Mishkin Claim. Marcus & Millichap responded to the Debtor's objection with a counter-motion to allow the Admin. Claim. The Debtor and the Creditors Committee both oppose the counter-motion. The court deems the Mishkin Claim to be merged into the Admin. Claim and the court's ruling below will apply to both.

   This Memorandum Decision contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. The bankruptcy court has jurisdiction over this matter pursuant to 28

U.S.C. § 1334 and 11 U.S.C. §§ 328, 330 & 503.[1] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (B). For the reasons set forth below, approval of the Admin. Claim will be denied without prejudice to Marcus & Millichap's rights as a prepetition unsecured creditor.

**BACKGROUND.**

The Debtor owns and operates a 27.7 acre mobile home and R.V. park known as the Royal Oak Resort on the banks of the Kings River in Kingsburg, California (the "Property"). The Debtor's president is Alan Degenhardt ("Degenhardt"). In early 2004, the Debtor was in serious financial trouble and its shareholders decided to sell the Property through the services of Marcus & Millichap. On May 8, 2004, the Debtor executed a Representation Agreement giving Marcus & Millichap exclusive authorization to sell or exchange the Property (the "First Listing Agreement").

The pertinent terms for sale under the First Listing Agreement contemplated a selling price of $2.5 million with a $1 million cash payment and seller financing of $1.5 million. Marcus & Millichap's fee under the First Listing Agreement was to be 6% of the selling price. The Debtor did not disclose to Marcus & Millichap that the Property was subject to a delinquent mortgage in the approximate amount of $1.6 million and that the mortgage was in foreclosure. This condition effectively prohibited the Debtor from performing the "seller-financed" term of sale set forth in the First Listing Agreement. The Debtor kept this information concealed from Marcus & Millichap for five months.

Marcus & Millichap worked very hard to find a buyer for the Property. It prepared a market analysis, extensively advertised the Property, and distributed a marketing package to more than 1,000 brokers nationwide. Marcus & Millichap's staff invested hundreds of hours on the project and made several trips to Kingsburg to visit the Property. Some offers were received for the Property, but the selling effort failed when it

---

[1] Unless otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., applicable to cases filed before October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

2

became apparent that the Debtor would need to file bankruptcy to save the Property from foreclosure. The First Listing Agreement expired by its own terms on November 30, 2004.

The Debtor filed a voluntary chapter 7 petition on December 21, 2004. James E. Salven was appointed as the chapter 7 trustee (the "Trustee"). It is not clear whether Marcus & Millichap approached the Trustee about remarketing the Property, or whether the Trustee initiated the discussion. Marcus & Millichap gave the Trustee a copy of the marketing package it had previously prepared for the Property. On February 1, 2005, the Trustee entered into another Representation Agreement giving Marcus & Millichap exclusive authority to sell the Property (the "Second Listing Agreement"). The form of the Second Listing Agreement was virtually identical to the First Listing Agreement except the selling terms, which contemplated an all cash sale. Marcus & Millichap's fee under the Second Listing Agreement was to be 5% of the selling price.

On January 26, 2005, the Trustee submitted an Ex Parte Application to Employ Jeff Mishkin [sic] as Real Estate Broker seeking authority to employ Marcus & Millichap under § 327 (the "Employment Application"). The Employment Application included a statement from the Trustee that he had no knowledge of any prior connections between the Debtor and Marcus & Millichap:

> . . .
>
> 8. To the best of Trustee's knowledge, Broker has had no prior business association and has no connections with himself, any creditors of Debtor or any other parties in interest in this Chapter 7 case or their respective attorneys or accountants, the United States Trustee, or any person employed in the office of the United States Trustee. *Additionally, Broker has no connections with the Debtor.*
>
> 9. To the best of Trustee's knowledge, Broker is a "disinterested person" herein as defined in Section 101(14) of the Bankruptcy Code, as required by § 327(a) of the Bankruptcy Code and does not hold or represent an interest adverse to the estate. (Emphasis added.)
>
> . . .

///

///

///

The Employment Application was supported by a declaration of Jeff Mishkin as Regional Manager of Marcus & Millichap filed pursuant to Federal Rule of Bankruptcy Procedure 2014(a)[2] (the "Mishkin Declaration"). The Mishkin Declaration includes an affirmative statement disavowing any prior relationship with the Debtor and declaring *Mishkin's* "disinterestedness":

> . . .
>
> 3. To the best of my knowledge, *I have had no prior business association and no connections with the Debtor*, any creditors of Debtor or any other parties in interest in this Chapter 7 case or their respective attorneys or accountants, the United States Trustee, or any person employed in the office of the United States Trustee. Additionally, I have no connections with the Trustee.
>
> . . .
>
> 5. To the best of my knowledge, I am a "disinterested person" herein as defined in Section 101(14) of the Bankruptcy Code, as required by Section 327(a) of the Bankruptcy Code and I do not hold or represent an interest adverse to the estate.
>
> 6. I
>
>> a. *am not a creditor* . . . .
>>
>> . . .
>>
>> e. do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, Debtor or an investment banker, or for any other reason.
>
> . . .

(Emphasis added.)

Based on the Employment Application, the court entered an order authorizing the Trustee to employ Jeff Mishkin and Marcus & Millichap to sell the Property (the "Employment Order"). The Employment Application and the Employment Order, as

---

[2]FRBP 2014(a) requires in pertinent part:

> The [professional employment] application shall be accompanied by a verified statement of the person to be employed *setting forth the person's connections with the debtor*, creditors, any other party in interest, their respective attorneys and accountants . . . . (Emphasis added.)

4

drafted, only refer to the employment of Jeff Mishkin. However, the Second Listing Agreement is between the Trustee and Marcus & Millichap. Mishkin's roll was merely that of an agent for Marcus & Millichap, the entity now seeking an administrative expense award based on the Employment Order and the Second Listing Agreement. Mishkin has not asserted a personal claim or interest in this matter.

On or about March 2, 2005, the Trustee entered into a Purchase Agreement with the person who is now the Debtor's president, Alan Degenhardt, wherein Degenhardt agreed to purchase the Property for $2.5 million cash (the "Degenhardt Sale"). The Trustee filed a motion to approve the Degenhardt Sale which was set for hearing on June 15, 2005. However, prior to the hearing, Degenhardt (purportedly) acquired all of the common stock of the Debtor, set himself up as the Debtor's managing officer thereby taking complete control of the Property, and reneged on his personal obligation to consummate the Degenhardt Sale. Two days before the scheduled hearing, on June 13, 2005, Degenhardt caused the Debtor, through its counsel, to file an application to convert the case to chapter 11. The Trustee's motion to approve the Degenhardt Sale was subsequently dropped from calendar.

On September 29, 2005, Jeff Mishkin filed the Mishkin Claim as "Regional Manager" of Marcus & Millichap for $125,000, the lost commission from the failed Degenhardt Sale. The Mishkin Claim was filed as a priority claim under §§ 507(a)(1) and 503(b) (administrative expenses for the actual, necessary cost of preserving the estate, including commissions for services rendered after commencement of the case). The Mishkin Claim included no supporting documentation.

Marcus & Millichap filed the Admin. Claim on October 13, 2005. The Admin. Claim seeks the same $125,000 lost commission as did the Mishkin Claim. The Admin. Claim alleges that the Debtor "colluded with [Degenhardt] to prevent a closing of the [Degenhardt Sale] and payment of the commission." The Admin. Claim also alleges that Marcus & Millichap "incurred substantial expense and rendered substantial services to sell the Property, and should be compensated accordingly."

As an alternative grounds for relief, the Admin. Claim alleges that the Debtor breached the First Listing Agreement and requests an unsecured claim based on its prepetition relationship with the Debtor:

> In further support of the CLAIM, [Marcus & Millichap] alleges that DEBTOR had entered into a Representation Agreement with [Marcus & Millichap] for the sale of the Property prior to the filing of DEBTOR'S bankruptcy case, and that *DEBTOR breached such agreement. Thus, to the extent that this CLAIM is not allowed as an administrative expense claim, it is a general unsecured claim.* (Emphasis in italics added.)

Attached to the Admin. Claim as supporting documentation are copies of the Second Listing Agreement and the Degenhardt Purchase Agreement. The Admin. Claim was signed by Marcus & Millichap's counsel under penalty of perjury.

The Debtor filed an objection to the Mishkin Claim. Marcus & Millichap responded with a counter-motion to allow the Admin. Claim (the "Counter-Motion"). The Counter-Motion requests payment of the lost commission from the Second Listing Agreement based, *inter alia*, on Degenhardt's maneuver to take control of the Debtor and frustrate the Degenhardt Sale. The basis for the Admin. Claim is stated in the Counter-Motion as:

> Creditor seeks allowance and payment of its claim for real estate brokerage services rendered to this bankruptcy estate, *for the estate's breach of an exclusive listing and/or purchase agreements*, for the estate's breach of the covenant of good faith and fair dealing, and/or for interference with Creditor's contract with the estate. (Emphasis added.)

Marcus & Millichap contends that it did everything it was required to do under the Second Listing Agreement, including producing a "ready and willing" buyer, and that it fully earned its commission. Alternatively, Marcus & Millichap seeks quantum meruit compensation for "substantial and beneficial services rendered to the estate."

The Counter-Motion is supported by a declaration of Douglas Danny, a Senior Investment Associate with Marcus & Millichap, which summarized Marcus & Millichap's (Creditor's) *prepetition* relationship with the Debtor and the extensive effort it put into trying to sell the Property as follows:

/ / /

6

. . .

3. In May of 2004, and prior to the date that Debtor filed its Chapter 7 Bankruptcy case in December 2004, Creditor was retained to sell Debtor's real property commonly known as 39700 Road 28, Kingsburg, California ("Property") pursuant to a written exclusive representation agreement. A true and correct copy of such agreement is attached hereto as Exhibit 1 and by this reference made a part hereof ("Listing Agreement #1"). Debtor's Property is a 27.7-acre membership RV park and resort adjacent to the King's River.

4. Frank Rogers, another broker of Creditor, and I were primarily responsible for marking and funding buyers for the Property. Frank Rogers is also an experienced commercial real estate broker located in Creditor's San Francisco office.

5. Pursuant to the Listing Agreement #1, the original listing price was $2,500,000. The Listing Agreement #1 further provided for seller financing. The Debtor did not inform Creditor that is was in default on the Property loan and there was a potential foreclosure. Only after 5 months of fielding offers did we discover that the Property was in foreclosure. Thus, seller financing was not feasible. The Listing Agreement #1 was extended in writing through the [sic] November 30, 2004 with a reduced listing price of $2,000,000.

6. In December of 2004, after to [sic] the expiration of Creditor's Listing Agreement #1, the Debtor filed a Chapter 7 bankruptcy case. Due to the foreclosure, pending Trustee sale and possibility of bankruptcy, it was futile to continue the marketing of the property for the debtor.

. . .

9. Creditor spent extensive time and expense performing a market analysis, marketing, and negotiating purchase transactions for the Property. We prepared an extensive market analysis and a 42 page offering memorandum.

10. Creditor marketed the Property aggressively by utilizing broadcast fax (233 people), broadcast email (approximately 400 clients), 1000 mailers, National Internet MLS (LoopNet), newspaper ads (Wall Street Journal, LA Times, San Francisco Chronicle and Fresno Bee), Trade Shows and Conventions (MHI - April 2005, WMA - October 2004, George Allen NWRT - September 2004). Frank Rogers and I presented this property to 43 Marcus & Millichap offices with a total of 1000 Brokers via Mnet, the internal company internet system. Additionally we called a target buyer pool of over 1000 owners and cooperating brokers to promote the availability of the listing. Mr. Rogers and I fielded numerous buyer and broker calls in the marketing process. We also made several trips to Kingsburg and Fresno to meet with the Debtor and/or Trustee and potential buyers.

. . .

13. In addition, Creditor incurred actual out-of-pocket costs in marketing the Property, including, without limitation, advertising, printing, postage, supplies, and staff salaries. It would take some effort to recapture these costs for the Court, but I believe we could do so if necessary.

14. During the period Creditor had the listing for the Property, we generated 5 offers for the Property, including the offer of Alan J. Degenhardt. . . .

/ / /

**ISSUES.**

1. Whether entry of the Employment Order precludes subsequent review of Marcus & Millichap's qualifications for employment under Bankruptcy Code § 327(a).

2. Whether Marcus & Millichap's Employment Application failed to satisfy the duty of disclosure required of professional persons under § 327(a) and Rule 2014(a).

3. Whether Marcus & Millichap's prepetition relationship with the Debtor, through the First Listing Agreement, made Marcus & Millichap not "disinterested" and therefore disqualified from employment by, and compensation from the estate.

4. Whether Marcus & Millichap is entitled to compensation on some State law theory, such as quantum meruit.

**ANALYSIS.**

**The Employment of a Professional Person May Be Reviewed at Anytime for Compliance With § 327(a).**

Pursuant to 11 U.S.C. § 327(a), a trustee, with the court's approval, may employ one or more professional persons, "that do not hold or represent an interest adverse to the estate, *and that are disinterested persons* . . . ." (Emphasis added.)[3]

An order authorizing the employment of a professional person under § 327(a) may be reviewed by the bankruptcy court at any time. Bankruptcy Code § 328(c) expressly permits the bankruptcy court to revisit the employment of a professional under section 327(a), and to deny compensation for services and reimbursement of expenses, if at any time during the employment "such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."

> In the exercise of its own ongoing affirmative responsibility to "root out impermissible conflicts of interest" under Bankruptcy Code §§ 327(a) and 328(c), the bankruptcy court must determine whether any competing interest of a court-

---

[3] The definition of a "person" under § 101(41) includes an "individual, partnership and corporation." There is no dispute that Marcus & Millichap is a "professional person" within the meaning of § 327(a).

8

appointed professional "created either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors--an incentive sufficient to place those parties at *more than acceptable risk*--or the *reasonable perception of one*." *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994) citing *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987). (Emphasis in original.)

The court retains a continuing supervisory power to revisit areas of potential conflict and to disqualify a professional if conflict problems arise or the professional's representation otherwise fails to conform to the disinterestedness standard. *Security Bank of Washington v. Steinberg (In re Westwood Shake & Shingle, Inc.)*, 971 F.2d 387, 390 (9th Cir. 1992).

### Marcus & Millichap's Employment Application Failed to Satisfy the Duty of Disclosure.

A professional seeking to be employed under § 327 has an affirmative duty to make a complete and candid disclosure of all facts concerning its transactions with the debtor:

> Pursuant to § 327, a professional has a duty to make full, candid and complete disclosure of all facts concerning his transactions with the debtor. . . . Professionals must disclose all connections with the debtor, creditors and parties in interest, no matter how irrelevant or trivial those connections may seem. . . . The disclosure rules are not discretionary. . . . The duty to disclose is not vitiated by negligent or inadvertent omissions. . . . A court may sanction a professional for disclosure violations regardless of actual harm to the estate. *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 480 (9th Cir. BAP 1996), (citations omitted), aff'd, *Mehdipour v. Millichap*, 139 F.3d 1303 (9th Cir. 1998)

> "Coy, or incomplete disclosures . . . are not sufficient. . . ." "[T]he duty is one of complete disclosure of *all facts* . . ." "The burden is on the person to be employed to come forward and make *full, candid, and complete disclosure*." . . . The disclosure rules are applied literally, even if the results are sometimes harsh. . . . Negligent or inadvertent omissions "do not vitiate the failure to disclose." . . . Similarly, a disclosure violation may result in sanctions "regardless of actual harm to the estate" (emphasis in original, citations omitted). *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp)*, 63 F.3d 877, 881 (9th Cir. 1995), cert. denied, *Neben & Starrett, Inc. v. Chartwell Financial Corp.* 516 U.S. 1049, 116 S.Ct. 712 (1996)(discussing the principles underlying disclosure requirements of § 329 and FRBP 2016 but noting that the disclosure requirements of FRBP 2014 are applied just as strictly.)

Fed.R.Bankr.P. 2014(a) requires disclosure under penalty of perjury of all relevant facts necessary for the court to determine the applicant's ability to meet the criteria of § 327(a). Specifically, it requires that the application for employment be accompanied by

a "verified statement of the person to be employed setting forth the person's connections with the debtor. . . ." Rule 2014(a) is supplemented by Region 17 United States Trustee Program Guidelines, Section 2.1.4., Professional Disclosure, which requires that the professional's verified statement must affirmatively show, *inter alia*, that the professional complies with the requirements of 11 U.S.C. § 101(14) and 327(a).

The disclosure requirements of Fed.R.Bankr.P. 2014(a), are strictly applied and impose an independent duty upon the professional applicant.

> "*All facts that may be pertinent* to a court's determination of whether [a professional] is disinterested or holds an adverse interest to the estate must be disclosed." . . . . "[Professionals] cannot pick and choose which connections are irrelevant or trivial." . . . "Even conflicts more theoretical than real will be scrutinized." . . . Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees. *In re Park-Helena Corp.*, 63 F.3d at 881-82 (emphasis in original, citations omitted).

Failure to make disclosure may result in disqualification of a professional person. If the lack of disclosure is discovered after employment is approved, it may also result in denial and disgorgement of compensation. *In re Hathaway Ranch Partnership*, 116 B.R. 208, 220 (Bankr. C.D. Cal. 1990).

Here, Marcus & Millichap's Employment Application failed to disclose, indeed it included a sworn statement from Jeff Mishkin affirmatively disavowing any prior business dealings or connections with the Debtor. Mishkin was, or should have been, fully aware of the failed First Listing Agreement, and the potential for a claim against the Debtor based on the work performed prior to the bankruptcy and the Debtor's misrepresentation of its financial condition. Marcus & Millichap had an affirmative duty to (1) disclose those issues, and (2) get the issues resolved, if possible, before the employment began. The prepetition events were not called to the court's attention until Marcus & Millichap sought approval of its Admin. Claim. By then, it was too late to satisfy the disclosure requirements of the Code and the Rules. "Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed.R.Bankr.P. 2014(a), court-appointed [professionals] proceed *at their own risk*." *Rome v. Braunstein.*, 19 F.3d at 59. (Emphasis in original.)

In reply to the Debtor's objection and the "disclosure" issue, Jeff Mishkin signed another declaration stating that his statements in support of the Employment Application were limited to his personal relationship with the Debtor: other brokers worked under the First Listing Agreement and Mr. Mishkin *personally* had no prior business relationship or connections with the Debtor. The court finds this argument to be unpersuasive and disingenuous. Mr. Mishkin submitted the first Mishkin Declaration on behalf of Marcus & Millichap, it was submitted to satisfy Marcus & Millichap's duty of disclosure, and Mr. Mishkin is not the one now seeking the award of an administrative expense.

In further reply to the Debtor's objection, Douglas Danny signed a second declaration stating that he did disclose the First Listing Agreement to the Trustee and provided the Trustee with copies of prior offers for the Property and the previous marketing package. The Trustee disavowed any knowledge of these facts in the Employment Application, but assuming Mr. Danny's statements are true, that does not change the result. Marcus & Millichap's duty of disclosure ran to the court, not just to the Trustee.

Marcus & Millichap is no stranger to the disclosure rules prescribed in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. In *Mehdipour*, another real estate case, the bankruptcy court sanctioned Marcus & Millichap for failure to disclose that its real estate broker, Tony Azzi, had a financial relationship with the buyer of the property. The court found that Marcus & Millichap "was not completely candid in its disclosure of Azzi's connections with the buyers and the terms of the loans Azzi made to the buyers." *Mehdipour*, 202 B.R. at 481.[4] In this case, Marcus & Millichap again failed to satisfy the duty of full and candid disclosure when it applied for employment under section 327(a). Disqualification from employment and denial of administrative

---

[4]The court did approve Marcus & Millichap's employment, and the payment of a commission, less the sanction, because the disclosure problems related to the broker, Azzi. The court found that Marcus & Millichap itself, was "disinterested" and therefore not disqualified from employment under § 327.

11

fees is the proper result.

**The First Listing Agreement Made Marcus & Millichap a Creditor of the Debtor, and Therefore Not "Disinterested" Within the Meaning of § 101(14).**

Section 101(14) defines "disinterested person" as a person who "*is not a creditor*" and that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection, with or interest in, the debtor . . . or for any other reason."

> Section 327(a) prohibits the employment of professionals who hold or represent an interest adverse to the estate and who are not disinterested. The bankruptcy court does not have authority to allow the employment of a professional in violation of § 327, and the employment is void *ab initio*. . . . The ultimate decision as to whether there is a disqualifying conflict or adverse interest lies within the discretion of the court. . . . Any professional who the court determines to hold or represent an interest adverse to the estate or who is not disinterested is not an officer of the estate during the time of conflict and must be denied compensation for services performed during the conflict pursuant to § 330. *Mehdipour*, 202 B.R. at 478 (citations omitted).

Section 327(a) prescribes a two-pronged test for the employment of a professional person - the "adverse interest" test and the "disinterestedness" test, both of which must be met before a professional person is eligible to be employed. "'A disinterested professional is one that can make unbiased decisions, free from personal interest, in any matter pertaining to the debtor's estate. . . . The purpose of the rule that [the professional] be disinterested is to assure undivided loyalty to the debtor.'" *First Interstate Bank of Nevada, N.A. v. CIC Investment Corporation (In re CIC Investment Corp.)*, 192 B.R. 549, 553-554 (9th Cir. BAP 1996) (citations omitted).

"Disinterestedness has been defined as possessing or asserting any economic interest that would tend to lessen the value of a bankruptcy estate or create an actual or potential dispute in which the estate is a rival claimant." *Halbert v. Yousif (In re Florence Tanners, Inc.)*, 225 B.R. 336, 346 (Bankr. E.D. Mich. 1998).

The record here supports the conclusion that Marcus & Millichap was not "disinterested" because it was a creditor of the Debtor at the time it applied for employment. A "creditor" is defined in § 101(10) of the Bankruptcy Code as:

///

12

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.

A "claim" is defined in § 101(5) as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

The term "claim" and thus the classification of who is a "creditor," is broadly construed. *See In re Jensen*, 995 F.2d 925, 928 (9th Cir. 1993). The *allowance* of a claim against the Debtor is governed by "applicable law." Section 502(a) & (b)1 (stating that a claim is deemed allowed unless a party in interest objects and the claim is determined to be unenforceable against the debtor or property of the debtor under any agreement or applicable law for a reason other than because the claim is contingent or unmatured). However, federal law determines when a claim arises for purposes of a bankruptcy proceeding, "a claim is ripe as an *allowable* claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued." *Cool Fuel Incorporated v. Board of Equalization of the State of California (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1006 (9th Cir. 2000). (Emphasis added.)

A professional holding a potential prepetition claim against a debtor for damages, based on any legal theory under applicable law, is a creditor of the estate and therefore not "disinterested" even if that claim has not been reduced to a cause of action or adjudicated against the debtor. Bankruptcy Code sections 327(a), 101(14) and 101(10)(A), ". . . taken together, unambiguously forbid a debtor in possession from retaining a prepetition creditor to assist it in the execution of its Title 11 duties." *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994). The claim must be waived if the professional is to be employed. *In re Princeton Medical Management, Inc.*, 249 B.R. 813, 816 (Bankr. M.D. Fla. 2000).

Here, both the Admin. Claim and the Counter-Motion make extensive reference to the First Listing Agreement and the Debtor's responsibility for its failure. The record clearly suggests that Marcus & Millichap provided substantial services and incurred

13

substantial expenses in performance of the First Listing Agreement. To the extent that Marcus & Millichap retained any legal right to seek damages against the Debtor based on former management's misrepresentation of material facts, breach of contract, the covenant of good faith and fair dealing, quantum meruit, etc., whether unliquidated, contingent, disputed, or otherwise, that right to seek compensation constituted a "claim" against the Debtor. No where does Marcus & Millichap disavow that it had a prepetition claim against the Debtor and Marcus & Millichap makes no representation that its "claim" was ever waived. Indeed, Marcus & Millichap requests, as alternative relief in its Admin. Claim, that it be allowed an unsecured claim for damages based on the totality of its efforts to sell the Property. As a creditor of the Debtor, Marcus & Millichap was therefore not "disinterested" within the meaning of § 101(14) and not qualified for employment under § 327(a).

      The court recognizes, that in appropriate circumstances it has the equitable power to award fees and/or expenses to a professional whose employment was approved by the court after *full disclosure of all potential conflicts*, whose employment is subsequently determined to be invalid, and who provided services in reliance upon the employment order, so long as the services performed were outside of any conflict of interest and the lack of disinterestedness did not actually interfere with the professional's representation of the estate. *In re CIC Investment Corp.*, 192 B.R. at 553-554. Here, there is no evidence in the record to suggest that Marcus & Millichap's lack of "disinterestedness" actually interfered with the service it rendered to the Trustee. However, the court does not need to determine whether those issues affected Marcus & Millichap's services because the threshold for the court to exercise that discretion, full disclosure, was notably absent. The court cannot conclude that Marcus & Millichap provided real estate marketing services in reasonable reliance on the Employment Order when Marcus & Millichap failed to fully and candidly disclose critical facts affecting its "disinterestedness." Marcus & Millichap was disqualified from employment under section 327(a), without regard to the quality of the services it rendered postpetition.

**Marcus & Millichap's Right to *Quantum Meruit* Compensation.**

Marcus & Millichap requests alternative relief on a quantum meruit theory for the value of services it rendered to both the Debtor and the Trustee. The court has no basis to question Marcus & Millichap's competence and diligence, or the value of the work it did both before and after the bankruptcy was filed. However, "compensation under § 503 does not allow the professional to side step the requirements of § 327 and § 330–the professional must still be disinterested and not hold any adverse interests." *Mehdipour*, 202 B.R. at 479 (citation omitted). "Compensation to professionals acting on behalf of the estate must be based on provisions of the [Bankruptcy] Code. The Code does not provide for fee awards based on state law theories such as *quantum meruit*." *In re Weibel, Inc.*, 176 B.R. 209, 212 (9th Cir. BAP 1994). Therefore, this court cannot award quantum meruit compensation to Marcus & Millichap as an administrative expense under § 503.

That is not to say, however, that Marcus & Millichap is without any right to relief in this case. The pleadings filed in this matter give only a small window of what actually transpired before the bankruptcy was filed, and the court cannot decide in this proceeding what rights to relief, what damages, and what defenses the parties may be able to assert against each other under State law. Marcus & Millichap acknowledged in its Counter-Motion that a full review of its claim will require some discovery. That suggests the possible need for an evidentiary hearing if the parties cannot negotiate a reasonable resolution of their differences. The court has concluded for purposes of this contested matter that Marcus & Millichap was a "creditor" within the meaning of the Bankruptcy Code based on prepetition events which appear to be disputed. The list of potential theories for a claim against the Debtor would necessarily include *quantum meruit* relief. There is nothing about this decision that precludes Marcus & Millichap from filing an unsecured claim in this case based on the First Listing Agreement and applicable State law.

///

**Conclusion.**

Based on the foregoing, the court finds and concludes that Marcus & Millichap was not "disinterested" within the meaning of § 101(14). Based on the First Listing Agreement, Marcus & Millichap was a creditor of the Debtor throughout the term of its employment. Marcus & Millichap failed to fully and candidly disclose its prepetition relationship with the Debtor to the court and failed to get any "disinterested" issues resolved before its employment began. Accordingly, Marcus & Millichap was not qualified for employment under § 327(a), its employment was invalid *ab initio* and its administrative claim cannot be approved. This ruling is without prejudice to Marcus & Millichap's right to file or amend its claim for damages, if any under applicable State law, based on its prepetition relationship with the Debtor and to participate in this chapter 11 case as an unsecured creditor.

Dated: March 15, 2006

W. Richard Lee
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

DATED: 3/15/06          By: J. Neguchi
                              Deputy Clerk

EDC 3-070 (New 4/21/00)

Office of the US Trustee
2500 Tulare Street, Room 1401
Fresno, CA 93721

David Jenkins
PO Box 1406
Fresno, CA 93716

Maureen McQuaid
1408 Chapin Ave #5
Burlingame, CA 94010

Michael Hertz
PO Box 40012
Fresno, CA 93755-0012

Kings River Resorts, Inc.
39700 ROAD 28
KINGSBURG, CA 93631