

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 04-60523-B-11
)
Kings River Resorts, Inc., ) DC No. LRP-3
)
    Debtor. )
)

**MEMORANDUM DECISION REGARDING FINAL APPLICATION BY GENERAL COUNSEL FOR CREDITORS' COMMITTEE FOR APPROVAL AND PAYMENT OF FEES AND/OR EXPENSES**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

René Lastreto II, Esq., of Lang, Richert & Patch, P.C. ("LRP") appeared as counsel for the committee of unsecured creditors ("Committee").

David R. Jenkins, Esq., appeared on behalf of the debtor, Kings River Resorts, Inc. (the "Debtor").

Before the court is a final Application for Approval and Payment of Fees and/or Expenses[1] (the "Application") filed by LRP under 11 U.S.C. § 330.[2] The only objection comes from one member of the Committee, Max Griebe. For the reasons set forth below, Mr. Griebe's objection will be overruled and the Application will be approved.

---

[1] The relevant pleading incorrectly states that it is an application for interim approval of fees and expenses. The Debtor's chapter 11 plan has been confirmed and this Application was brought in conjunction with the Debtor's motion for a final decree. Therefore, this represents LRP's final application for approval of all fees and costs incurred in the case.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *prior* to October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 330 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Background.**

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 21, 2004. The case was converted to chapter 11 on June 20, 2005. The United States Trustee (the "UST") appointed the Committee pursuant to § 1102(a) on August 16, 2005. The Committee, through Mr. Griebe, selected LRP to serve as its general counsel in the case and that employment was approved on February 16, 2006. The Debtor successfully refinanced its secured debt and reserved from that new loan sufficient funds to pay all allowed unsecured claims in full. On February 7, 2007, the Debtor confirmed its chapter 11 plan providing for immediate distribution of the money to allowed claims. Thereafter, the Debtor filed numerous claim objections seeking to liquidate the disputed claims for payment. On April 19, 2007, the Debtor filed its motion for entry of an order closing the case, representing that virtually all claims had been resolved and paid. LRP filed the Application on April 17, 2007.

**Summary of Fees.**

This Application relates to services performed by LRP during the last two months of activity in the case, February 1 through March 31, 2007. LRP requests approval and payment of fees in the amount of $4,512.50 and costs in the amount of $25.00. LRP also seeks final approval of fees and costs which were approved and paid during the case on an interim basis in the amount of $27,562.50. The Committee filed written statements, signed by Mr. Griebe, approving all of LRP's prior interim fee applications.

At the hearing, the court noted that the Committee had not filed a statement of approval of the Application as required by UST's Guideline 2.2.2. In response, counsel

for LRP advised the court that Max Griebe, chairman of the Committee had submitted to LRP an objection to the Application. At the court's request, LRP lodged a copy of Mr. Griebe's objection. LRP was given an opportunity to respond, Mr. Griebe filed a reply, and the matter was taken under submission.

**Applicable Law.**

The standard for compensation of professionals employed to work in a chapter 11 case is defined in § 330(a). Section 330(a)(1)(A) authorizes the court to award "reasonable compensation for actual, necessary services rendered" by an attorney. Section 330(a)(1)(B) authorizes "reimbursement for actual, necessary expenses." Section 330(a)(2) authorizes the court to "award compensation that is less than the amount of compensation that is requested." The court must find that the compensation is reasonable. Section 330 (a)(3) requires the court to consider "the nature, the extent, and the value of such services, taking into account all relevant factors." Those "relevant factors" include the time spent, the rates charged, and whether the services "were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of" the bankruptcy case.

**Max Griebe's Objection.**

Mr. Griebe does not oppose final approval of all interim fees. Mr. Griebe's objection relates only to a portion of the new fees requested by LRP. Specifically, Mr. Griebe objects to fees allocated by LRP to "case administration" in the amount of $875 and fees allocated to "claims administration" in the amount of $2,737.50. The total amount which the court has been asked to review is $3,612.50.

Mr. Griebe objects to all compensation requested by LRP for services rendered after confirmation of the chapter 11 plan on February 7, 2007. He contends that there was nothing left to be done in the case except completion of the claim objections. He states that the proposed disposition of claims, and the basis for the subsequent claim objections, was worked out at a meeting between the Committee and the Debtor on January 11, 2007. He further states that two of the three members of the Committee voted, in a private

meeting without counsel, to dissolve the Committee, after the plan was confirmed. Mr. Griebe notified the Committee's counsel, Michael T. Hertz, Esq., of the vote. Mr. Hertz then discussed the matter with the other two members and persuaded them against termination of the Committee's activities before completion of the claim objection hearings. In that regard, the court construes Mr. Griebe's objection to be based on his contention that LRP's post-confirmation legal services were not necessary, reasonable, or beneficial toward completion of the bankruptcy case.

**Analysis.**

**LRP's Response to the Committee's Dissolution Vote.**

      In the court's view, the Committee played an important role in this chapter 11 case. The Debtor's principal, Alan Degenhardt, acquired ownership of the Debtor and converted it from chapter 7 to chapter 11 literally on the eve of the chapter 7 trustee's motion to sell the Debtor's assets, a maneuver which generated significant controversy and mistrust of the new debtor-in-possession. The Debtor's books and records were incomplete and unreliable. Early in the case, the Debtor was able to secure new financing in an amount sufficient to pay all secured debt, the estimated allowed amount of all unsecured claims, and all estimated administrative claims. Consequently, after the secured debt was paid, the Debtor was sitting on a substantial amount of cash which it could not distribute without a court order and until (1) a chapter 11 plan was confirmed, (2) the claim objections were resolved, and (3) the administrative expenses were approved. The Debtor also needed to use some of the cash to make repairs and prepare itself to reopen for business.

      The Debtor needed to stay in chapter 11, so it could continue operating as a going business. The appointment of a chapter 11 trustee was not a realistic option, so the court instructed the Committee to "watch the money," to monitor the Debtor's activities, to make recommendations to the court with regard to the chapter 11 plan, and to comment on any request by the Debtor to use some of the money for operating expenses.

      The Committee also assumed a significant role in the claim objection process. The

4

1  Debtor had to review and resolve approximately 170 claims filed by individuals who held,
2  or claimed to hold paid "memberships" with rights to use the Debtor's facilities. Many of
3  those claims were filed without supporting documentation. The Debtor's records were
4  incomplete and virtually nonexistent for the purpose of evaluating many, if not all, of the
5  "member" claims. The Committee was actively involved in negotiating with the Debtor a
6  process for resolving the disputed claims and making sure that the Debtor did not unfairly
7  use the claim objection process.
8       Mr. Griebe contends that Mr. Hertz ignored the Committee's vote to dissolve itself
9  after the chapter 11 plan was confirmed. However, the court is not persuaded that the
10 Committee's unilateral decision to dissolve itself was appropriate, or that the decision,
11 standing alone, is sufficient reason to find that any post-confirmation work done by LRP
12 in furtherance of completion of the case, was unreasonable.
13      The Committee was appointed by the UST pursuant to statute § 1102(a)(1). The
14 Committee was comprised of "persons willing to serve" who held claims against the
15 Debtor of the kind represented by the Committee, *i.e.*, the general unsecured claims.
16 § 1102(b). The UST served a notice of the Committee's formation on all unsecured
17 creditors on August 15, 2005. A committee appointed under § 1102(a) may only be
18 changed by a court order made "on request of a party in interest and after notice and a
19 hearing." § 1102(a)(4). Generally a chapter 11 creditors' committee continues until a
20 trustee is appointed, the chapter 11 plan is confirmed, the case is converted to another
21 chapter, or the case is dismissed. Here, the Debtor's disclosure statement, and the
22 confirmed plan both provide for and represent to the general creditors, that the
23 Committee, in its discretion, would stay involved in the case "for the purpose of assisting
24 in the reconciliation of claims."
25      Mr. Griebe states in his objection that two of the three Committee members voted
26 to dissolve the Committee after the chapter 11 plan was confirmed. At that time, the
27 claim objections had not been completed and the money had not been distributed. Mr.
28 Griebe suggests, in essence, that the Committee decided on its own that the appointment

of a Committee was no longer necessary. By an email dated February 13, 2007, Mr. Griebe communicated that decision to the UST. The UST apparently referred the matter back to the Committee's counsel. Nothing was communicated to the unsecured creditors regarding dissolution of the Committee, and the matter was never brought to the court for hearing and approval.

Once the Committee was formed under § 1102(a)(1), its members accepted certain powers and duties, which enable them to fulfill their ultimate responsibility-to advocate on behalf of the general unsecured creditors. Those powers and duties are prescribed in § 1103 and include the power to meet and employ professionals at the debtor's expense (§ 1103(a)), the power to consult with the debtor regarding administration of the case (§ 1103(c)(1)), the power to participate in the formulation of a chapter 11 plan (§ 11032(c)(3)), and the power to advise the other unsecured creditors regarding acceptance or rejection of the plan (§ 1103(c)(3)). Once the Committee employed LRP to serve as its counsel, LRP was subject to the same powers, duties, and loyalties as prescribed by statute to the Committee itself. Perhaps most relevant to this dispute is the Committee's prescribed power and duty to "perform such other services as are in the interest of those represented." § 1103(c)(5). It is in this context that this court assigned the Committee with, *inter alia*, the specific responsibility to oversee the distribution of the money which the Debtor was holding to pay the unsecured creditors as the claim objections were resolved.

If the Committee truly believed that the reasons for its existence had been fully satisfied, and that there were no "other services" it needed to perform in the interest of all of the unsecured creditors (§ 1103 (c)(5)), then that decision should have been communicated to the other creditors and the Committee should have requested an order of the court formally terminating its existence. If Mr. Griebe's desire to "dissolve" the Committee was motivated by personal factors, such as an inability to perform his duties

as chairman of the Committee, or a personality conflict with Mr. Hertz,[3] then Mr. Griebe should have notified the UST and sought permission to withdraw from the Committee. In any event, the court concludes that the Committee's decision to "dissolve" itself was procedurally inappropriate and ineffective. It did not absolve the Committee from its statutory responsibilities, nor did it terminate LRP's duty to represent the Committee. To the extent that Mr. Griebe's objection appears to be based solely on Mr. Hertz's disregard of the "dissolution" vote, that objection must be overruled.

**Reasonableness of LRP's Fees.**

Upon review of LRP's Application, and all prior applications, and the evidence offered in support thereof, the court is persuaded that LRP's legal services and costs were actual and necessary to the administration of this chapter 11 case (§§ 330(a)(1)(A) & (B)), and that the services rendered were beneficial toward completion of the case (§330(a)(3)(c)). Mr. Hertz's response to the Griebe objection paints a comprehensive and detailed picture of LRP's activities in this case, the difficulties encountered, and the beneficial results achieved; an efficient resolution of all disputed claims, followed by prompt full payment of those claims. Mr. Griebe filed the only objection which is discussed above. Other than Mr. Griebe's general objection to all post-confirmation fees, Mr. Griebe does not point to any specific time entries or legal services by LRP which do

---

[3]Mr. Griebe's objection, LRP's response, and Mr. Griebe's reply leave the court with the distinct impression that a personality conflict developed over the course of the case between Mr. Griebe and Mr. Hertz. For example, his objection accuses Mr. Hertz of directly communicating with other Committee members, and "inserting himself into the affairs of the Committee." The court notes too that Mr. Griebe's election not to "sign off" on LRP's final fee application (UST Guideline 2.2.2) appears to have been his personal decision, and not the consensus of the Committee. Mr. Griebe's reply includes a copy of an email which he sent to the other Committee members dated February 11, 2007. In that email, Mr. Griebe makes an oblique reference to an internal conflict within the Committee, "[b]ased on recent events there doesn't appear to be any worthwhile reason for the Committee to continue in the case and *will probably only create additional angst*." (Emphasis added.) In an email sent to Mr. Hertz dated May 9, 2007, Committee member Camilla Pence summarizes the initial difficulties which the Committee had in retaining members and securing legal counsel. In that correspondence, Ms. Pence makes reference to "Max [Griebe] spewing derogatory and offensive comments."

1 | not fall within the "reasonableness" factors set forth in § 330(a)(3).

**Conclusion.**

Based on the foregoing, the court finds and concludes that the fees and costs requested by LRP were necessary and reasonable. Accordingly, Max Griebe's objection will be overruled and the Application will be approved.

Dated: August __3/__, 2007

_____
W. Richard Lee
United States Bankruptcy Judge